Donald J. MOLONEY, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 99–10429–MLW.

United States District Court,
D. Massachusetts.

Nov. 6, 2001.

Mary Elizabeth Carmody, United States Attorney's Office, Donohue Federal Building and Courthouse, Worcester, MA, Donald K. Stern, United States Attorney's Office, Boston, MA, for defendant.

Ann Marie Maguire, Keches & Mallen, P.C., Taunton, MA, for plaintiff.

## MEMORANDUM AND FIRST ORDER ON PLAINTIFF'S MOTION TO COMPEL FURTHER DEPOSITION TESTIMONY OF LISA ADAMS, M.D. (# 20)

COLLINGS, Chief Magistrate Judge.

### I. INTRODUCTION

On February 25, 1999, plaintiff Donald J. Moloney [1] ("Mr. Moloney" or the "plaintiff") filed a complaint against the United States of America (the "defendant" or "United States") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq,* for injuries resulting from the alleged medical malpractice of Lisa Adams, M.D. ("Dr.Adams"). In February of 1997 [2] Dr. Adams was an employee of the Neponset Health Care Center ("NHC"), which, at that time, was a subsidiary of Harbor Health Services, Inc. ("Harbor Health"). Pursuant to 42 U.S.C. § 233(g), Harbor Health was designated as a federally funded health care facility as well as an employee of Public Health Services.

During the course of her deposition, counsel for the plaintiff questioned Dr. Adams as to the substance of communications she had with others regarding her treatment of Mr. Moloney. Three of the communications, all

---

1. Throughout the pleadings in the case file the plaintiff's name is spelled either "Moloney" or "Maloney". The former spelling is used in the complaint and thus has been adopted in this memorandum.

2. In the text of the plaintiff's motion the date of his treatment at NHC is given as February, 1996. (# 20 at 1) The correct date is February of 1997. (*See* Assented To Motion To Amend Complaint # 9)

conversations, were between Dr. Adams and her immediate medical supervisor, Robert S. Baratz, D.D.S., M.D., Ph.D., who was then the Associate Director of Medicine and Chief of Urgent Care at the NHC. (Plaintiff's Motion # 20, Exh. 5 at 51–2) The first conversation took place within a matter of days after Dr. Adams saw Mr. Moloney; the second and third occurred in the summer of 1998.[3] (# 20, Exh. 5 at 52–8) Dr. Adams also had one or two conversations with the Chief Operating Officer of Harbor Health, Dan Driscoll, some months after she had seen the plaintiff. (# 20, Exh. 5 at 69–71)

At the deposition, Dr. Adams, following the advice of her attorney, refused to answer questions regarding the substance of those conversations. Defendant's attorney claimed that the conversations were privileged, asserting both the attorney/client and work product privileges. The plaintiff has filed a motion to compel this testimony (# 20) which the defendant has opposed. (# 34) Thereafter in response to an Order For Further Briefing (# 38), the United States submitted a further brief in support of the defendant's opposition (# 44) and Mr. Moloney filed a memorandum of law in support of his motion (# 41). At this juncture, the motion to compel is in a posture for resolution.

## II. FACTS

On December 13, 1996, Mr. Moloney visited NHC both for a physical examination and with concerns about recent weight loss. As earlier noted, Harbor Health is a federally supported health care center and an employee of the Public Health Service under 42 U.S.C. § 233(g). At the time of this visit, the plaintiff did not report that he had any stomach pain. The nurse practitioner who conducted the exam took a medical history and a system review, including a history of risky sexual behavior. The practitioner advised Mr. Moloney to stop smoking, discussed changes in his diet, and told him about a clinic where he could obtain a free test for HIV/AIDS.

On January 1, 1997, Mr. Moloney reported to the Boston Medical Center emergency room. He was suffering from pain in his abdomen, as well as fever, chills and sweats. While the plaintiff indicated that he some pain in the lower left part of his stomach, he had positive bowel sounds, his abdomen was not distended, and there was no guarding or rebound. Mr. Moloney denied having any burning sensation during urination, penile discharge, change in his bowel movements, vomiting or diarrhea.

The plaintiff was diagnosed at the Boston Medical Center with gastroenteritis and instructed to take Tylenol. He was also advised to call his doctor at NHC or return to the emergency room if he continued to have any symptoms, particularly stomach pain. Lastly he was told to follow up at the Urgent Care Clinic in 3–5 days as well as return to his primary care doctor at NHC in approximately two weeks.

For the next six weeks Mr. Moloney allegedly continued having pains in his abdomen. He also began to have low-grade fevers. Although by February the pain had worsened considerably, he did not return either to Boston Medical Center or NHC during this time period purportedly as a result of his negative perception of the medical profession or denial of the severity of his illness. On February 15, 1997, Mr. Moloney arrived at the NHC medical facility with lower abdominal pain and a 103 degree fever. The plaintiff first conferred with a nursing assistant whom he told that he had been experiencing abdominal pain for two months together with pain in his lower back and testicles. Mr. Moloney was then seen by Dr. Adams.

During his physical examination, the plaintiff supposedly told Dr. Adams that he felt as if "something was going to blow up inside me." At his deposition Mr. Moloney recollected very little of the conversation between him and Dr. Adams, but he did remember the nature of the physical examination, as well as describing the nature and location of his abdominal pain. He also stated that he

---

**3.** The second communication was a brief telephone call while the third conversation took place at an in-person meeting at Dr. Baratz's home in Newton, Massachusetts. (# 20, Exh. 5 at 57–8)

felt shocked and upset when Dr. Adams inquired about his sexual history.

Dr. Adams related a different version of the events. She remembered being told by Mr. Moloney that he had no nausea, vomiting, diarrhea, or penile discharge, but that he did report a burning urination after sex. He said that his fever had been present for one day and that he had upper respiratory symptoms for one week. Dr. Adams indicated that generally the plaintiff appeared well and was in no acute distress, although his symptoms did suggest a possible sexually transmitted disease ("STD"), as well as an upper respiratory infection. In order to determine the presence of STDs, cultures were taken. Mr. Moloney was given an antibiotic injection, a prescription for oral antibiotics, and instructions to seek further medical attention if the symptoms persisted.

On February 16, 2001, Mr. Moloney was transported by ambulance to Quincy Hospital after collapsing in pain at his girlfriend's apartment. At the emergency room, Mr. Maloney reported that he had been seen approximately 48 hours earlier at NHC and had been told that he had a sexually transmitted disease. The attending physician at Quincy Hospital suspected peritonitis because Mr. Moloney had a rigid abdomen. It was discovered in the operating room, however, that the plaintiff had perforated sigmoid diverticulitis with massive fecal peritonitis for which he was treated with a left colectomy, end colostomy and a Hartman pouch. Following surgery he suffered multiple organ failure and Adult Respiratory Distress Syndrome. Mr. Moloney was ultimately transferred to Brigham and Women's Hospital for further treatment, most particularly in ventilatory management.

### III. DISCUSSION

Mr. Moloney has moved to compel the defendant to reveal the substance of Dr. Adams' conversations with Dr. Baratz and Mr. Driscoll regarding her care and treatment of him. In the motion, the plaintiff argues that the attorney/client and the work

product privileges interposed at the deposition simply do not appertain. From all that appears Moloney's point is well-taken since the United States seems to have abandoned its position wholesale. Indeed, in opposition to the motion to compel, the government makes no mention of either the attorney/client or the work product privilege.

Instead, the defendant now argues that the conversations are protected under a federal self-critical analysis privilege, a federal medical peer review privilege and under state law, specifically Massachusetts General Laws chapter 111, §§ 203–204. This change of tack midstream raises the threshold question of whether the defendant has waived the right to claim the protection of these three privileges which were not claimed at the time of the deposition.

During the deposition of Dr. Adams, the following colloquy ensued:

**Q:** Tell me how you came to speak to Dr. Barrett [sic] [4] about Donald Moloney?

**Ms. Carmody:** I'm going to object at this point. I think that this conversation may be privileged and so I'm going to assert the objection with respect to privilege. I think you can ascertain the chronology of the conversation, but with respect to the subject, at this point in time I'm going to object and instruct her not to answer as to substance. We may change the position but at this point in time, I believe that this conversation is privileged.

**Ms. Cook:** Privileged on what grounds?

**Ms. Carmody:** Attorney/client and work product privilege in anticipation of litigation. Conversation that was—

**Ms. Cook:** How can it be anticipation of litigation if it only occurred some days after the incident?

**Ms. Carmody:** It can. I don't think I have to explain that to you right now. I may review this—I will review this issue after I know all of the facts concerning the nature of this phone call. But at this point in time, as far as the substance is concerned, I'm going to object on the grounds

---

4. The correct spelling is "Baratz"—the Court Reporter must have misheard the testimony and transcribed the name as "Barrett." In the excerpts from the transcripts quoted herein, "Dr. Barrett" and "Dr. Baratz" are one and the same person.

of privilege. I will tell you that I will review the facts underlying that and that if I change that, we'll make arrangements for you to get the information in a way that doesn't in any way inconvenience you. At this point in time based on what I now know I'm going to interpose the objection.

**Ms. Cook**: Obviously I'm going to reserve my rights in that regard and move to compel the substance of that conversation. My position is that—

**Ms. Carmody**: If I don't change that position based on further inquiry—I haven't said—

**Ms. Cook**: I want to state my position for the record. My position is if it occurred several days after the incident that in no way could the conversation be privileged. There was no litigation at that time nor had anyone thought of any litigation and, you know—

**Ms. Carmody**: You don't know that.

**Ms. Cook**: We'll look to move to compel that.

Just so you know, we can deal with the subject later, but I wouldn't be willing to have to make a trip back to New York, for example—

**Ms. Carmody**: I understand that. We'll work it out.

Plaintiff's Motion # 20, Exh. 5 at 53–5.

Later in the deposition, counsel engaged in a further exchange on this subject:

**Ms. Cook**: I just to be clear for the record, Mary, that your position is that these are privileged under the attorney/client privilege and the work product privilege?

**Ms. Carmody**: At this time that's my position.

**Ms. Cook**: That includes a conversation that took place just a few days after this incident between two doctors?

**Ms. Carmody**: At this time that's my position, that's right. What I'm going to say to you is with respect to first conversation. I will make further inquiry and I will let you know whether that objection stands. But at this time I'm going to assert the privilege and I will say to you also that if I determine that it is not a privileged conversation that I will make arrangements, without any inconvenience to you, to get that information either in writing or by telephone deposition. But with respect to the second two contacts, those are certainly within the privilege and so I would object and instruct her not to answer as those two conversations.

**Ms. Cook**: Again, your position on those is they're privileged by virtue of the attorney/client privilege or the attorney work product privilege?

**Ms. Carmody**: At this time, yes, that's my assertion.

**Ms. Cook**: Just so you'll know, I'm going to move to compel these. Obviously if you don't agree that they're not privileged—well, I'm going to expect more than a telephone deposition. I mean, I really don't think that's an acceptable way, at least from my point of view. I want a witness to talk about these things. I think this could be absolutely critical in my preparation of this case.

**Ms. Carmody**: We'll talk about that.

Plaintiff's Motion # 20, Exh. 5 at 58–60.

With respect to claims of privilege, the Federal Rules of Civil Procedure provide:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed.R.Civ.P. 26(b)(5).

The Advisory Notes accompanying this 1993 amendment explain that:

> Paragraph (5) is a new provision. A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the

party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection.

The party must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection. Although the person from whom the discovery is sought decides whether to claim a privilege or protection, the court ultimately decides whether, if this claim is challenged, the privilege or protection applies. Providing information pertinent to the applicability of the privilege or protection should reduce the need for in camera examination of documents.

Commenting on this Rule, one leading treatise states:

> An existing privilege exemption from discovery must be raised in a proper fashion to be effective in justifying a refusal to provide discovery. Failure to assert the privilege objection correctly can mean that the privilege is waived.
>
> An initial problem for the privilege-holder is the timing and precision of an objection. In the deposition context, as at trial, the objection should ordinarily be asserted when a question seeking privileged material is asked, and the questioner may explore the propriety of the objection with questions going to the availability of the privilege.

8 Wright, Miller & Marcus, *Federal Practice and Procedure:* Civil 2d § 2016.1 (1994)(footnotes omitted).

In another preeminent treatise, the Rule is similarly analyzed:

> Rule 26(b)(5), added in 1993, provides a procedure for asserting claims of privilege or work production protection for communications or materials that would otherwise be discoverable. The Rule requires the party asserting the privilege or protection to make the claim expressly, and to describe the nature of the information not produced in a manner that, without revealing information itself privileged or protected, will enable other parties to asses (sic) the applicability of the privilege or protection...

> This language requires the party asserting the privilege, at a minimum, to claim the privilege and briefly describe the information withheld. A blanket assertion of privilege is insufficient. Rather, the applicable privilege must be claimed for each document withheld. Although the party asserting the privilege is not required to reveal privileged information in complying with the Rule, enough information must be supplied so that the court can determine whether the asserted privilege is applicable.

6 *Moore's Federal Practice,* § 26.90[1] (Matthew Bender 3d ed.)(footnotes omitted).

By its terms, this Rule applies to depositions as well as other discovery vehicles. *See, e.g., Caplan v. Fellheimer Eichen Braverman & Kaskey,* 162 F.R.D. 490, 491–92 (E.D.Pa. 1995).

Further with respect to depositions, Rule 30(d)(1), Fed.R.Civ.P., reads in pertinent part that "[a]ny objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive way." Turning again to an authoritative treatise, the appropriate procedure to be followed in asserting a privilege under this latter rule is explained:

> A colorable good faith assertion of privilege, even if ultimately rejected by the court, is different: the privilege objection must be made to avoid waiver; it implicates substantive rights of the party apart from the litigation; and it serves to prevent depositions from becoming tools of abuse.

> \*     \*     \*     \*     \*     \*

When encountering a privilege objection at deposition, examining counsel should insist on making a record that will permit meaningful judicial evaluation of the privilege claim. For example, if in response to a question about corporate product development, the examining attorney is confronted with a privilege objection and instructed (sic) not to answer, examining counsel should:

-Determine the exact privilege asserted (e.g. attorney-client; trade secrets; critical self-evaluation; self-incrimination, and so

on)...Because Federal Rule of Evidence, Rule 501 makes states law privileges applicable in many federal court cases, counsel should not overlook potential idiosyncratic privileges.

-Require opposing counsel to articulate the basic rationale for asserting the privilege. Although opposing counsel will frequently assert that saying anything jeopardizes protected information, this is generally incorrect...

7 *Moore's Federal Practice*, § 30.43[2] (Matthew Bender 3d ed.)(footnote omitted).

At the deposition of Dr. Adams, the defense attorney claimed the attorney/client and work product privileges to block testimony. In the face of the motion to compel, no effort has been made to justify these assertions of privilege and, consequently, any protection potentially afforded by them is foreclosed.

Counsel for the United States did not interpose at the deposition any of the three privileges, i.e., federal self-critical analysis privilege, a federal medical peer review privilege or the state statutory privilege, now advanced which purportedly protect the subject conversations. Having failed to assert the privileges timely, any attempt to do so now violates the mandate of Rule 26(b)(5) to "make the claim expressly" and of Rule 30(d)(1) that an objection "be stated concisely". Moreover, because these privileges were never raised at the deposition, the nature of the conversations withheld were not described to enable plaintiff's counsel to assess the applicability of the privileges as provided by the rules, nor was plaintiff's counsel given the opportunity to establish a meaningful record for the court to evaluate the privilege claims. Finally, it defies logic to permit counsel to assert one privilege so as to preclude testimony at a deposition, but thereafter research and claim an entirely different privilege in response to a motion to compel. Such conduct most assuredly circumvents both the letter and the spirit of Rules 26(b)(5) and 30(d)(1).

Defense counsel simply cannot be allowed to circumvent completely the rules of procedure as is attempted here. On the facts of this case, the failure to assert the three privileges is not justified.[5] The motion to compel shall be allowed.

### V. Conclusion and Order

■ For the reasons stated, it shall be and hereby is ORDERED that the Plaintiff's Motion To Compel Further Deposition Testimony Of Lisa Adams, M.D. (# 20) be, and the same hereby is, ALLOWED. I find that the defendant's opposition to the motion to compel was not substantially justified and no other circumstances make an award of expenses unjust. Rule 37(a)(4), Fed.R.Civ.P. In this connection, I note that it is improper to assert a privilege and then sit back and require the opposing side to file a motion to compel; when a party instructs a witness not to answer on the grounds of privilege, it is that party's obligation to file a motion for protective order. *American Hangar, Inc. v. Basic Line, Inc.*, 105 F.R.D. 173, 175 (D.Mass.1985). *See also*, Lauriat, *Massachusetts Deposition Practice Manual* (MCLE, 1992 & Supp.1996, 1998 & 2000) at Ch. 18, pp. 14–15. Accordingly, it is FURTHER ORDERED, pursuant to Rule 37(a)(4), Fed. R.Civ.P., that the United States shall pay to the plaintiff the reasonable expenses incurred in bringing the instant motion, including attorney's fees.

With respect to the reasonable expenses, including attorney's fees, counsel for the

---

**5.** In her Further Brief, Etc. (# 44), defendant's counsel seems to indicate that her conduct was justified due to her lack of knowledge of the law with respect to the three privileges now asserted. This is no excuse—the statutes she cites have been on the books for at least nine years. The caselaw upon which she relies to argue that the privileges are applicable goes back to 1970. *See, e.g., Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970). Further, it appears that defendant's counsel attempts to justify her conduct on the basis that she was unaware of the alleged privileged conversations before they were revealed at the deposition. This also is not sufficient justification. Defendant's counsel was under a duty to find out about them at a much earlier time. The identity of Dr. Baratz and Mr. Driscoll should have been revealed in response to plaintiff's interrogatories, specifically interrogatory # 8. (*See* Memorandum of Law, Etc. (# 41) at Exh. 3) The interrogatories were served in June, 2000; the deposition occurred in February, 2001.

plaintiff shall file and serve, *on or before the close of business Friday, November 23, 2001,* an affidavit or affidavits documenting the amount that he will claim as the reasonable expenses, including attorney's fees, which the plaintiff incurred in pursuing the motion to compel. The defendant, United States, is granted leave to file and serve a response/opposition to the amount claimed or any deficiencies in the supporting documentation *on or before the close of business Friday, December 7, 2001.*

It is FURTHER ORDERED that the defendant shall pay counsel for the plaintiff the costs, including reasonable attorney's fees, that plaintiff's counsel will incur in attending the continued deposition of Dr. Adams.