NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

## MISCELLANEOUS DOCKET NO. 885

IN RE UNITED STATES,

Petitioner.

On writ of mandamus from the United States Court of Federal Claims,
case no. 04-CV-1365C, Judge Susan G. Braden.

ON PETITION FOR WRIT OF MANDAMUS

Before GAJARSA, LINN, and PROST, Circuit Judges.

PER CURIAM.

## O R D E R

The United States petitions for a writ of mandamus to direct the United States Court of Federal Claims to vacate its orders that required the United States to produce certain documents that the United States believes are protected from disclosure by the attorney-client privilege, the work-product doctrine, or the deliberative-process privilege. Chevron U.S.A., Inc. opposes.

Chevron and the United States each previously owned separate parcels in an oil reserve. Pursuant to the National Defense Authorization Act for Fiscal Year 1996, which required that the government's interest in the oil reserve be sold, the parties agreed to an equity redetermination process through an equity process agreement. The parties designated an independent petroleum engineer to formulate a recommendation concerning the parties' interests. The Department of Energy's Assistant Secretary for Fossil Energy (ASFE) issued administrative orders that established a process for equity finalization in which Chevron's and the Department's equity finalization teams would

present their positions to the independent petroleum engineer. Chevron and the Department entered into a decoupling agreement and an equity process agreement. A procedure was also established involving, inter alia, finalization of equity interest determinations by the ASFE and review by the Office of Hearings and Appeals.

Chevron sued the United States in the Court of Federal Claims in 2004, alleging that the Department breached an Equity Process Agreement (the Agreement) and violated an Administrative Order. Chevron asserts, inter alia, that a Department Deputy General Counsel engaged in "ex parte communications" with the ASFE or his delegate and that those communications were prohibited by the Agreement and the Administrative Order. Chevron also asserts there were other improper ex parte communications. Chevron seeks damages related to expenditures incurred in the equity redetermination process.

In this case, the Agreement established an equity redetermination process for the ASFE's review of the independent petroleum engineer's recommendation. As quoted by the Court of Federal Claims, the Agreement stated that:

> The ASFE will not consult, directly or indirectly, with the DOE field equity technical team concerning equity redetermination-related matters without also consulting with the Chevron equity team on any such matter ( . . . not includ[ing] the DOE technical staff in Washington, D.C.). No such communications by the ASFE with either equity team shall be on an *ex parte* basis. Any written materials submitted to the ASFE by either equity team shall be provided to the other party. . . .

The Court of Federal Claims also stated that the Administrative Order, which the ASFE issued to establish an equity finalization process for presentation of the parties' positions to the independent petroleum engineer, similarly prohibited the Department and Chevron from having ex parte communications with the independent petroleum engineer.

Chevron sought discovery and the United States produced a privilege log identifying thousands of folders of documents asserted to be protected by the attorney-client privilege, the work-product doctrine, and/or the deliberative-process privilege. Chevron moved to compel production of the documents and the Court of Federal Claims conducted an in camera review of the documents considered by Chevron to be most relevant to the lawsuit. The Court of Federal Claims conducted an in camera review of hundreds of documents, considering many documents for more than one privilege assertion. Production of some of those documents was ordered, either in whole or in part.

The United States asserts that three errors require mandamus relief. First, the United States asserts that the Court of Federal Claims incorrectly allowed documents related to alleged ex parte communications to be excepted from the attorney-client privilege. Second, concerning documents asserted to be protected by the work-product doctrine, the United States asserts that the Court of Federal Claims (1) improperly required disclosure of factual material in such documents, and (2) improperly allowed Chevron to obtain documents that contained attorney thought processes based upon Chevron's demonstration of substantial need for the documents and that an undue hardship existed because the documents could not be obtained from another source. Third, the United States asserts that, contrary to the deliberative-process privilege, the Court of Federal Claims improperly required disclosure of factual material that was included in draft decisions, draft letters, or comments concerning those documents.

The remedy of mandamus is available only in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. In re Calmar, Inc., 854 F.2d 461, 464 (Fed. Cir. 1988). A party seeking a writ bears the burden of proving that it has no

other means of attaining the relief desired, <u>Mallard v. U.S. Dist. Court for S. Dist. of Iowa</u>, 490 U.S. 296, 309 (1989), and that the right to issuance of the writ is "clear and indisputable," <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 35 (1980). In an appropriate case, a writ of mandamus may issue "to prevent the wrongful exposure of privileged communications." <u>In re Seagate Tech., Inc.</u>, 497 F.3d 1360, 1367 (Fed. Cir. 2007) (citing <u>In re Regents of the Univ. of Cal.</u>, 101 F.3d 1386, 1387 (Fed. Cir. 1996)).

### 1.    Attorney-Client Privilege

The attorney-client privilege protects the giving of professional legal advice to those who can act on it and the giving of information to a lawyer to enable the lawyer to give sound and informed advice. <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 390 (1981); <u>In re Spalding Sports Worldwide, Inc.</u>, 203 F.3d 800, 805 (Fed. Cir. 2000). The crime-fraud exception to that privilege nonetheless requires disclosure of documents otherwise privileged if the documents were created in the furtherance of a crime or fraud. <u>Spalding</u>, 203 F.3d at 807. To invoke the crime-fraud exception, a party challenging the attorney-client privilege must make a prima facie showing that the communication was made in furtherance of a crime or fraud. <u>Id.</u>

The Court of Federal Claims held that if communications were made that were prohibited by the Agreement and the Administrative Order, those communications constituted misconduct that should not enjoy the protection of the attorney-client privilege. The Court of Federal Claims expressly stated that the exception to the privilege applied to any documents showing "a breach of an essential term in a high-profile government contract." We agree with the United States that that test, as stated by the Court of Federal Claims, could be applied too broadly and could result in the disclosure of many documents that should remain privileged. Nonetheless, we

determine that the Court of Federal Claims properly held that the particular documents at issue in this case should be produced, because the documents were incident to alleged misconduct. The misconduct in this case includes the "ex parte" contacts that are alleged to be prohibited by the Agreement or the Administrative Order. For the same reasons the attorney-client privilege does not protect documents made in furtherance of an asserted crime or fraud, the attorney-client privilege should not protect the documents found to be incident to asserted misconduct in the context of this specific agreement.

An exception to the attorney-client privilege "comes into play when a privileged relationship is used to further a crime, fraud, or other fundamental misconduct." In re Sealed Case, 676 F.2d 793, 807 (D.C. Cir. 1982). "Whereas confidentiality of communications and work product facilitates the rendering of sound legal advice, advice in furtherance of a fraudulent or unlawful goal cannot be considered 'sound.' Rather, advice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection." In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984). "A privilege surviving until the relation is abused and vanishing when abuse is shown to the satisfaction of the judge has been found to be a workable technique for the protection of the confidences of client and attorney." Clark v. United States, 289 U.S. 1, 16 (1933). We determine that the attorney-client privilege does not protect the documents or communications that the trial judge has determined to be incident to asserted misconduct involving "ex parte communications" prohibited by the agreement in this case.

## 2.  Work-Product Protection

Work-product protection is provided to documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. RCFC 26(b)(3)(A).[1] However, some materials may be discovered if the party shows that it has substantial need for the materials to prepare its case and cannot without undue hardship obtain their substantial equivalent by other means. RCFC 26(b)(3)(A)(i). Nonetheless, if the court orders discovery of such materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." RCFC 26(b)(3)(A)(ii).

### A.  Factual Work Product

Factual work product can be discovered based upon a showing of substantial need and undue hardship. Seagate, 497 F.3d at 1375. The Court of Federal Claims discussed substantial need and undue hardship in its review of many of the documents asserted to contain factual work product. Additionally, in its August 28, 2008 order the court stated that when it determined that work product contained factual material, it had also determined that Chevron had established a substantial need for the documents and that Chevron would face undue hardship to otherwise obtain the information. Thus, the United States has not shown clear error regarding the rulings related to factual work product.

---

[1]  For purposes of this petition, the language of the Rules of the Court of Federal Claims and the Federal Rules of Civil Procedure are identical.

## B.    Opinion Work Product

As noted above, RCFC 26 allows a party to obtain certain work product prepared in anticipation of litigation or for trial if, inter alia, the party seeking the documents shows that it has a substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent by other means.  Nonetheless, the United States argues that any documents containing opinion work product cannot be required to be produced.

RCFC 26(b)(3)(B) provides that work product is protected from disclosure if it includes the mental impressions, conclusions, opinions, or legal theories of a party's attorney concerning the litigation.  For portions of two documents, the Court of Federal Claims held that the redacted text contained attorney thought processes and that the documents were subject to the work-product privilege.  Nonetheless, the Court of Federal Claims held that Chevron had shown a substantial need for the documents and that Chevron would bear an undue hardship in obtaining the information by other means.

The United States argues that the substantial need and undue hardship factors do not apply to opinion work product.  We agree with the United States that, once the Court of Federal Claims held that the documents were shown to contain opinion work product prepared in anticipation of litigation or concerning the litigation, then the Court of Federal Claims should not have required their disclosure pursuant to RCFC 26(b)(3)(B) based upon a mere showing of substantial need and undue hardship. Instead, the court must "protect from disclosure" opinion work product even if it requires disclosure of other work product in general.

We note that the Supreme Court of the United States has expressly declined to decide whether documents including opinion work product can ever be ordered to be produced. In Upjohn Co. v. United States, 449 U.S. 383, 400-01 (1981), the Court discussed the "special protection" given to documents revealing an attorney's mental processes and noted that while some courts have held that no showing of necessity can overcome the protection of work product, other courts have indicated such documents might be discoverable in rare situations. The Court held that "[w]hile we are not prepared at this juncture to say that such material is always protected by the work-product rule, we think a far stronger showing of necessity and unavailability by other means . . . would be necessary to compel disclosure." Upjohn, 449 U.S. at 401-02. The Court remanded the case so that the lower courts could, if appropriate, apply a standard other than substantial need and undue hardship.

We follow a similar course in this case. We agree with the United States that the substantial need and undue hardship standards are not sufficient to overcome the protection given to opinion work product. Thus, for the two documents held by the Court of Federal Claims to contain opinion work product but nonetheless ordered to be produced, the United States has met its burden of establishing clear error. Thus, we grant the United States' petition for a writ of mandamus concerning these two documents and we direct that the Court of Federal Claims vacate its order that required disclosure of those two documents based on a showing of substantial need and undue hardship.[2]

---

[2] The United States and the Court of Federal Claims refer to these two documents as 889(1914) and 1384.

Misc. 885 - 8 -

### 3.  Deliberative-Process Privilege

Some of the documents at issue in this mandamus petition concern drafts of decisions or letters documents and comments related to the draft decisions and letters. The Court of Federal Claims directed production of portions of some of those documents. The United States challenges the Court of Federal Claims' determinations regarding documents that it identifies as including factual content that falls under the government's deliberative-process privilege.

The deliberative-process privilege is a subset of the executive privilege and was created to encourage "open, frank discussion between subordinate and chief concerning administrative action," Kaiser Aluminum & Chem. Corp. v. United States, 141 Ct. Cl. 38, 48 (1958), and to "prevent injury to the quality of agency decisions," NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150-51 (1975). Generally, to be exempt from disclosure under the deliberative-process privilege, the government must show that the information is pre-decisional and deliberative. In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). Pre-decisional documents "may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Moye, O'Brien, O'Rourke, Hogan & Pickert v. National R.R. Passenger Corp., 376 F.3d 1270, 1277 (11th Cir. 2004). Such documents are deliberative "to the extent that they reveal the mental processes of decisionmakers." Id. at 1278 (quoting Assembly of State of Cal. v. United States Dep't of Commerce, 968 F.2d 916, 921 (9th Cir. 1992).

The United States argues that by requiring disclosure of factual information in draft decisions or in communications related to draft decisions, the Court of Federal Claims improperly required disclosure of deliberative information, because those

documents when viewed with the final decision would indicate deliberations regarding the facts that were added to or removed from the draft. As indicated below, the United States' position is supported by substantial caselaw indicating that draft decisions, including factual material, should be protected by the deliberative-process privilege.[3]

The Court of Federal Claims recognized that factual information asserted to be deliberative "should be disclosed . . . but only it if 'does not reveal the deliberative process and [is] not intertwined with the policy-making process.'" Chevron U.S.A., Inc. v. United States, 80 Fed. Cl. 340, 361 (2008) (quoting Ryan v. Department of Justice, 617 F.2d 781, 791 (D.C. Cir. 1980)). The Court of Federal Claims proceeded to dissect documents between factual and deliberative content. However, the division between factual and deliberative content is not exact, and merely because the content of a particular document involves factual information, that does not mean that the deliberative-process privilege does not apply. Instead, factual information that itself reveals the deliberative process and cannot be severed from the deliberative context is protected. Environmental Prot. Agency v. Mink, 410 U.S. 73, 87-88 (1973). The Supreme Court stated that courts have recognized that the determination "requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." Id. at 88.

The distinction between whether the nature of the material is factual or opinion is thus not dispositive of whether the material is deliberative. City of Virginia Beach, Va. v. United States Dep't of Commerce, 995 F.2d 1247, 1253 (4th Cir. 1993) (district court

---

[3] Most of the cases concern the deliberative process exemption to a Freedom of Information Act request, see 5 U.S.C. § 552(b)(5). That exemption is "co-extensive with the common law deliberative process privilege," CACI Field Servs., Inc. v. United States, 12 Cl. Ct. 680, 686 n.7 (1987), aff'd, 854 F.2d 464 (Fed. Cir. 1988).

was "deflected from the proper mode of analysis by its concern to categorize the disputed papers in light of the Mink fact/opinion dichotomy"). Courts "focus less on the nature of the materials sought and more on the effect of the materials' release: the key question in [such] cases became whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Dudman Commc'ns v. Department of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987). See also Quarles v. Department of the Navy, 893 F.2d 390, 392 (D.C. Cir. 1990) (noting that courts hold exempt from disclosure factual material such as factual summaries by decisionmakers or factual material about the inner workings of the deliberative process itself). Thus, "facts contained in such documents must be considered within the context of the document as a whole, and within the context of the document as part of the agency's overall decision-making process." Rein v. United States Patent & Trademark Office, 553 F.3d 353, 375 (4th Cir. 2009).

For example, in Russell v. Department of the Air Force, 682 F.2d 1045, 1049 (D.C. Cir. 1982), the court held that twenty pages of historical factual information in a draft manuscript was protected by the deliberative-process privilege because "a simple comparison between the pages sought and the official document would reveal what material supplied by subordinates senior officials judged appropriate for the history and what material they judged inappropriate." See also Rein, 553 F.3d at 375 ("[i]nformation reasonably described as 'facts' when looked at in the vacuum . . . are nonetheless protected from disclosure when -- as revealed when examining the information's context -- disclosing that information as part of a larger document would reveal the very predecisional and deliberative material" that is protected by the privilege); City of

Virginia Beach, 995 F.2d at 1253, 1256 ("draft material, . . . particularly when presented by a subordinate to a superior for revision, is likely to receive deliberative process protection"; factual and deliberative matters were not reasonably segregable and disclosure of the material would necessarily reveal the opinions of personnel on the credibility and probity of the evidence related to allegations); Petroleum Info. Corp. v. United States Dep't of the Interior, 976 F.2d 1429, 1435, 1438 (D.C. Cir. 1992) (predecisional materials, even if factual in form, are protected if they reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter; disclosure of file would not reveal deliberative process because agency was merely compiling all facts from public sources and was not winnowing information into a small set of facts which would, if revealed, unveil the agency's reasoning by showing what it considered relevant); National Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1118-19 (9th Cir. 1988) (opinions or recommendations regarding facts or consequences of facts are not automatically ineligible for exemption from disclosure; courts have interpreted the exemption "to protect documents that would reveal the process by which agency officials make these determinations, whether or not the documents themselves contain facts or non-binding recommendations"); Wolfe v. Department of Health and Human Servs., 839 F.2d 768, 774-76 (D.C. Cir. 1988) (factual material describing inner workings of the agency's process protected from disclosure).

Thus, "whenever the unveiling of factual materials would be tantamount to the 'publication of the evaluation and analysis of the multitudinous facts' conducted by the agency, the deliberative process privilege applies." National Wildlife, 861 F.2d at 1119. "Before arriving at a final decision, the policymaker may alter his or her opinion

regarding which facts are relevant or the likely consequences of these facts, or both," and this is what the deliberative-process privilege is intended to protect. Id. at 1120. As these cases demonstrate, it is well-recognized that factual matter contained in government documents can expose deliberations in certain circumstances, and requiring production of the factual information in or related to draft decisions or letters would reveal the government officials' deliberations concerning what factual matter was or was not appropriate for inclusion in the final agency decision or letter.

Thus, the Court of Federal Claims erred when it determined that factual information in draft decisions or letters, including comments related to those draft documents, is not protected by the deliberative-process privilege. We grant the United States' petition for a writ of mandamus concerning the identified documents and we direct that the Court of Federal Claims vacate its order that required disclosure of portions of those documents based on a determination that they were factual and did not fall within the deliberative-process privilege.[4] The Court of Federal Claims did not address whether a misconduct exception to the deliberative-process privilege might apply to any of the documents, and thus we do not address that issue herein.

Accordingly,

IT IS ORDERED THAT:

---

[4] Thus, we determine that the deliberative process privilege applies to the portions of the following documents found by the Court of Federal Claims as containing factual matter: documents 278, 281, 298, 526, 548, 572, 577, 816, 819, 975, 979, 980, 983, 997, 1002, 1060, 1127, 1472, 1486, 1497, 1505, 1507, 3819, and 3946. The United States also listed document 2286 as a document asserted to involve the Court of Federal Claims' determination that it contained factual matter not protected by the deliberative process privilege. However, the Court of Federal Claims did not expressly base its determination regarding document 2286 on that ground, but determined that document 2286 was protected by the privilege and instead required that only a header of the document be produced. Thus, we do not direct that the Court of Federal Claims vacate its order regarding document 2286.

The petition for a writ of mandamus is granted to the following extent: the Court of Federal Claims is directed to vacate the portions of its order that required the United States to produce documents 889(1914) and 1384; and the Court of Federal Claims is directed to vacate the portions of its order that required the United States to produce documents 278, 281, 298, 526, 548, 572, 577, 816, 819, 975, 979, 980, 983, 997, 1002, 1060, 1127, 1472, 1486, 1497, 1505, 1507, 3819, and 3946. In all other respects, the petition for a writ of mandamus is denied.

FOR THE COURT

MAR 0 5 2009
_____
Date

/s/ Jan Horbaly
_____
Jan Horbaly
Clerk

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

MAR 05 2009

JAN HORBALY
CLERK

cc:     Leslie Cayer Ohta, Esq.
        Lawrence D. Rosenberg, Esq.
        Court of Federal Claims, Judge

s8