**ALASKA PULP CORPORATION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–153C.**

United States Court of Federal Claims.

Sept. 14, 1999.

Terrence O'Donnell, Williams & Connolly, Washington, D.C., for plaintiff.

Jane W. Vanneman, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant.

## *OPINION AND ORDER*

BASKIR, Judge.

In completing discovery, defendant has received documents that plaintiff claims are privileged as to itself. On February 24, 1999, **plaintiff filed a motion for a protective order requiring defendant to return all privileged documents obtained from CH2M Hill Corporation ("Hill"), a third party, in response to defendant's subpoena** ***duces tecum.*** **That motion is GRANTED.**

### *Background*

This issue initially involved only documents provided defendant by a third party, Hill, which plaintiff claims are protected under the attorney work-product privilege. Hill was an expert witness retained to assist APC in environmental litigation. The documents involved attorney work-product prepared by APC's counsel concerning litigation strategy. Plaintiff's motion for a protective order triggered extensive briefing focusing primarily upon whether plaintiff had waived the privilege. The matter was also addressed in the status conference held June 15, 1999.

Following the status conference, the Court issued an interim order dated June 25, 1999, which sets out the background of this issue in detail. The Court found that APC had not been given notice and thus there was no waiver in plaintiff's failure to object to the subpoena *duces tecum* served upon Hill.

During the briefing of the issue, defendant's waiver argument had expanded over time to include a claim of subject matter waiver. Defendant argued that the documents provided by Hill had lost their protected status by virtue of plaintiff's own production of privileged material, the so-called Craft memorandum. This document addressed the use of experts in separate litigation involving plaintiff. Plaintiff claimed that the production of the Craft memorandum

was inadvertent, and that it had not lost its privileged status.

Because the Craft memorandum was filed in open court, the Court was forced to put into place a number of remedial measures to preserve confidentiality of the documents until the privilege issue could be resolved. They are currently sealed under the May 21 and June 4, 1999, Orders. Defendant promptly complied with these measures.

In order to consider whether release of the Craft memorandum waived its privileged nature, the Court required evidence in the form of affidavit or declaration of counsel describing the efforts taken to prevent inadvertent disclosure. *See* June 25, 1999, Order. Pursuant to that Order, the Court has received and carefully reviewed both the Declaration of Michael L. Wang, and Defendant's Specific Factual Objections to APC's Declaration Concerning its Privilege Review Process.

### Analysis

The Court finds that plaintiff's production of the Craft memorandum and its attachments did not effect a subject matter waiver of otherwise privileged documents produced directly by Hill.

#### The Government's Theory:

The government offers no persuasive argument for inferring such a waiver. Defendant argued in general terms that the disclosure of witness preparation materials drafted by APC counsel for Hill for use in a separate lawsuit waived any privilege with respect to the entire collection of documents provided by Hill, without notice to plaintiff, in the present litigation.

Initially, the Court notes that defendant's subject matter waiver argument made a late entry into this litigation, first coming before the Court following its initial pleading on the privilege issue. *See* Defendant's Motion for Leave to Supplement its Opposition to Plaintiff's Motion for a Protective Order, dated April 27, 1999. Even at that juncture, defendant failed to make a strong case for waiver. Defendant's motion did not establish an adequate correlation between the two sets of documents justifying the drastic remedy it requested. In fact, it was only later, in its motion for clarification of this Court's Order

sealing the disputed documents, that defendant very briefly described the contents of the Hill documents—in a footnote. *See* Defendant's Motion for Clarification of the Court's May 21, 1999 Order Regarding Documents over which Plaintiff Claims Privilege, dated May 28, 1999, at 2 n. 2.

The government's somewhat off-hand treatment of its theory is underlined by the fact that it never filed a copy of the allegedly related Hill documents. Thus the Court would not be in a position to compare the Craft and Hill documents and apply the subject-matter waiver theory.

The Court has, of course reviewed the Craft memorandum prepared by APC in defending *Edwards v. APC,* an environmental suit brought in Alaska state court by landowners seeking damages from APC for diminution in the value of their property. The Court is also aware that defendant finds APC's defensive posture in environmental litigation relevant in rebuttal to plaintiff's claim that the Tongass Timber Reform Act caused it to close its mill. However, these proffers fall short of establishing that information provided plaintiff's consultant in a single case, waives any claim of privilege regarding all information provided the consultant by plaintiff in all subsequent, unrelated cases.

#### The Craft Memorandum Production:

We do not, however, have to rest on the government's failure of proof, or consider its extravagant interpretation of the subject-matter waiver doctrine. Its argument fails at a much earlier point.

The Court finds that plaintiff's production of the Craft memorandum documents was inadvertent and that it has not lost its privileged character. First, the documents were clearly intended to be withheld, as evidenced by the bold legend in the upper right hand corner of the first page: "Attorney Work Product—Attorney/Client Communication." Immediately upon learning of its disclosure of the memorandum, plaintiff claimed the attorney work-product privilege and requested that defendant return the documents. As any casual observer to this litigation would note, plaintiff, like defendant, has protected its rights every step of the way. There is no

indication that plaintiff, despite "assiduously protect[ing] its attorney-client and work product privileges" in the past, intended to waive its claims in this instance. *See* Declaration of Michael L. Wang, dated July 6, 1999 ("Wang Decl."). Clearly, counsel's failure to withhold the Craft memorandum in the privilege review process was an oversight.

Second, the screening procedures employed to protect privileged materials were not so lax as to deem plaintiff indifferent to disclosure of the documents. The Court has carefully considered the steps taken to avoid inadvertent disclosure of the documents. The document production and screening process required the efforts of a team of several lawyers and approximately ten to fifteen paralegals and secretaries. Counsel for plaintiff employed a multilayered review process—every document was to be reviewed by at least one attorney, those that were potentially privileged were to receive additional consideration, and random spot checks were conducted as a final measure. Wang Decl. at 3–5.

Given the extraordinarily large number of documents produced by plaintiff—approximately 70,000 pages—it is not surprising that one memorandum, albeit consisting of nearly 100 pages with attachments, escaped the privilege review process. Counsel for plaintiff went to great lengths to respond to the government's discovery request in a timely manner. Plaintiff did not ask for an extension of time, but delivered documents required for depositions within approximately three weeks of the deposition notices. *Id.* at 2. Under the circumstances, the Court finds that plaintiff took reasonable steps to protect the privileged nature of the Craft memorandum documents produced during discovery. *See National Helium Corp. v. United States,* 219 Ct.Cl. 612, 1979 WL 10176 (1979)(considers both the intent to suppress privileged materials and whether adequate steps taken to prevent disclosure of the documents).

Government counsel argues that *Carter v. Gibbs,* 909 F.2d 1450 (Fed.Cir.1990) demands the opposite result. However, unlike the disclosure in *Carter,* the release of the Craft memorandum is not "disclosure of attorney work product to an adversary *in the litigation for which the attorney produced that information*". *Id.* at 1451 (emphasis added). The memorandum was prepared by an attorney not directly involved in the present litigation, in connection with a suit not before this Court. In *Carter,* the purportedly privileged memorandum was actually filed with the Court by the holder of the privilege as part of its own motion. A stronger case for waiver of the attorney's work product could not be made.

Other rulings of this Court have consistently cited *Carter,* an egregious case by any measure, without abandoning the two-part inquiry of *National Helium. See B.E. Meyers & Co., Inc. v. United States,* 41 Fed.Cl. 729 (1998); *International Business Machines Corp. v. United States,* 37 Fed.Cl. 599 (1997); *and Telephonics Corp. v. United States,* 32 Fed.Cl. 360 (1994). We continue to apply that standard here, and find that privilege has not been waived as to the Craft memorandum.

### Conclusion

The Craft memorandum and all copies held by the government are to be returned to plaintiff's counsel. Originals and photocopies of all the Hill documents are to be returned immediately to plaintiff's counsel. Within 10 days, counsel for APC will evaluate all returned Hill documents to determine the extent to which they are privileged. All non-privileged documents provided by Hill are then to be delivered to the government in satisfaction of its original third party subpoena duces tecum. Those Hill documents for which APC claims privilege shall be treated in accordance with the customary procedures governing claims of privilege.

IT IS SO ORDERED.