**SIKORSKY AIRCRAFT CORPORATION,**
Plaintiff,

v.

**UNITED STATES, Defendant.**

Nos. 09–844C, 10–741C.

United States Court of Federal Claims.

Sept. 13, 2012.

James W. Poirier, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Jeanne A. Davidson, Director, Steven J. Gillingham, Assistant Director, and Kimberly I. Kennedy, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (quoting *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (internal quotation marks omitted)). Pending before the court is the United States' ("the government's") assertion of the deliberative process privilege for a string of e-mails previously disclosed to plaintiff, Sikorsky Aircraft Corporation ("Sikorsky"). Despite producing the e-mails as part of discovery responses in February 2011 and discovering its apparent error at a deposition in July 2011, the government did not communicate its claim of privilege to Sikorsky until May 2012. Thus, the government's actions raise a relatively novel question: whether a lack of diligence in asserting the deliberative process privilege to claw back previously disclosed documents can serve as a waiver of that privilege.

## BACKGROUND

This case centers on Sikorsky's alleged violation of Cost Accounting Standards ("CAS"), codified at 48 C.F.R. ("FAR") Chapter 99, Subchapter B, Part 9904. Generally speaking, the CAS require government contractors to record and report costs according to certain criteria. According to the government, Sikorsky violated CAS 418, FAR § 9904.418, by improperly allocating

Jeffrey A. Hall, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, Illinois, for plaintiff. Of counsel were Shayna S. Cook, Allison W. Freedman, and Georgia N. Alexakis, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, Illinois, and Karen L. Manos, Gibson, Dunn & Crutcher LLP, Washington, D.C.

overhead costs to government contracts. *See Sikorsky Aircraft Corp. v. United States*, 102 Fed.Cl. 38, 44 (2011). Sikorsky disputes the government's allegations and has raised affirmative defenses, including the defense that the statute of limitations expired prior to the government's assertion of its claim. In an earlier round of briefing, the court denied the government's motion for summary judgment upon that defense. *See Sikorsky Aircraft Corp. v. United States*, 105 Fed.Cl. 657, 666–74 (2012). The viability of that defense, among other issues, is now scheduled for trial in late October 2012.

Germane to Sikorsky's statute of limitations defense is the string of e-mails (identified as "Exhibit P," for reasons explained *infra* ) at the nexus of the current dispute. Exhibit P comprises exchanged e-mail messages between Mr. Robert Boyer, an auditor, and Ms. Janice Berardi, his superior at the Defense Contract Auditing Agency ("DCAA"), regarding audits of Sikorsky. The exhibit has an extensive history in this litigation. It was originally produced to Sikorsky by the government on February 17, 2011, more than eighteen months ago, as part of an unremarkable (and unremarked) set of discovery responses. *See* Pl.'s Opp'n to Def.'s Mot. to Strike Documents ("Pl.'s Opp'n") at 2. Five months later, on July 20, 2011, Sikorsky deposed Mr. Boyer and questioned him about Exhibit P, without any contemporaneous objections from the government. *Id.* At the end of Mr. Boyer's deposition, however, counsel for the government stated, "[i]t's come to my attention that [Exhibit P] may be the subject of deliberative process privilege, because it . . . refers to an ongoing DCAA audit. So I would like to request that [Exhibit P] and the deposition transcript be sealed for now, until this deliberative process issue can be determined." *Id.* Ex. D, Dep. of Robert Boyer ("Boyer Dep.") at 353:22 to 354:9 (July 20, 2011). Sikorsky agreed to the government's request. *Id.* Ex. D, Boyer Dep. at 354:13–21.

Two and one-half months later, on October 4, 2011, Sikorsky's counsel contacted the government to ask about the privilege issue, and followed up by e-mail on November 8, 2011. *See* Pl.'s Opp'n Ex. E (E-mail from Allison Freedman to Sarah A. Murray) ("When we spoke on October 4, you told me that you would get back to me that week with an answer. Despite the several messages that I have left for you, you still have not provided an answer."); *see also id.* Ex. I. Sikorsky's counsel made additional inquiries on November 29, 2011, December 2, 2011, January 17, 2012, and January 24, 2012, regarding whether the government would be asserting privilege. In each instance, the government responded that the decision had not yet been made but would be forthcoming. *See id.* Ex. H; Ex. I; Ex. J; Ex. K; Ex. L; Ex. M.

Up to and through almost all of 2011, the relevant government agency, DCAA, had not adopted specific procedures for asserting the deliberative process privilege. On December 19, 2011, DCAA's director, Patrick J. Fitzgerald, officially delegated the authority to assert the deliberative process privilege to certain subordinates. Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Strike Docs. Protected by the Deliberative Process Privilege ("Def.'s Reply") Ex. 1.[1] A month later, on January 19, 2012, DCAA Regional Director Ronald C. Meldonian asserted the deliberative process privilege over, among other documents, Exhibit P. *Id.* Ex. 2. Strangely, however, there is no evidence that this assertion of privilege was ever conveyed to Sikorsky. To the contrary, the government's counsel wrote to Sikorsky's counsel on January 27, 2012, more than a week after Mr. Meldonian's assertion of privilege, that "[w]e are still working on it[, *i.e.*, the privilege issue]." Pl.'s Opp'n Ex. M, at 1. As far as the court can tell from the record, that was the government's last communication on the subject until some months later.

On February 2, 2012, the government filed a motion to dismiss Sikorsky's statute of limitations defense. On March 5, 2012, Sikorsky responded in opposition, quoting in

---

1. As discussed more fully *infra,* the deliberative process privilege may only be invoked by an agency head unless explicitly delegated to a subordinate. *See Marriott Int'l Resorts, L.P. v. United States,* 437 F.3d 1302 (Fed.Cir.2006).

its brief portions of Exhibit P and attaching the entire document as an exhibit to its brief. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. Judgment on the Statute of Limitations Defense at 15 & Ex. P, ECF No. 166. In its brief, Sikorsky wrote as explanation that "[i]n the seven months since [Mr. Boyer's deposition], Sikorsky has asked the government more than five times whether the government would, in fact, claim privilege over Exhibit P. The government has never given Sikorsky an answer. Sikorsky's position is that the government has waived any privilege claim as to Exhibit P." *Id.* at 15 n. 3.

More than three months later, on May 14, 2012, the government's counsel wrote to Sikorsky's counsel, stating that it was asserting the deliberative process privilege over Exhibit P. The government asked Sikorsky to return or destroy all copies of Exhibit P in its possession and to remove all references to Exhibit P from Sikorsky's briefing. *See* Def.'s Mot. to Strike Docs. Protected by the Deliberative Process Privilege ("Def.'s Mot.") Ex. A. In a response dated May 30, 2012, Sikorsky refused to do so, but proposed redacting Exhibit P. *Id.* Ex. B. The government rejected Sikorsky's proposal, *id.* Ex. C, and on June 14, 2012, it filed its pending motion to strike Exhibit P.[2] The motion has been fully briefed and argued and is ready for disposition.

## THE DELIBERATIVE PROCESS PRIVILEGE

Any description of the deliberative process privilege must begin with the foundational understanding that "the public ... has a right to every man's evidence." *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (omission in original) (quoting *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). Thus, "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in

derogation of the search for truth." *Id.* at 710, 94 S.Ct. 3090. In short, privileges generally, and governmental privileges in particular, comprise those rare situations when "the public need for all available evidence balances against the public interest in confidentiality" and can be found wanting. Note, *The Privilege of Self–Critical Analysis,* 96 Harv. L.Rev. 1083, 1084 (1983).

The deliberative process privilege asserted here is one of the several branches of "executive privilege." Those branches relate to a range of executive functions and actions and may be considered as having a hierarchical ranking in importance. The strongest branch of executive privilege consists of what may be termed the "Presidential privilege," which rests in large part on the constitutional separation of powers, affords the President of the United States considerable autonomy and confidentiality, and gives "recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Cheney v. United States Dist. Court for the Dist. of Columbia,* 542 U.S. 367, 382, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004); *see Nixon,* 418 U.S. at 706–07, 94 S.Ct. 3090; *cf. Clinton v. Jones,* 520 U.S. 681, 701–06, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). Still another branch of the executive privilege consists of the "state secrets" or "national security" privilege, which protects from disclosure the executive branch's military, diplomatic, and foreign policy secrets. *See Nixon,* 418 U.S. at 710–11, 94 S.Ct. 3090 (quoting *United States v. Reynolds,* 345 U.S. 1, 10, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Chicago & Southern Air Lines v. Waterman S.S. Corp.,* 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948)). *See generally Marriott Int'l Resorts, L.P. v. United States,* 61 Fed.Cl. 411, 416 (2004), *amended,* 63 Fed.Cl. 144 (2004), *rev'd and remanded,* 437 F.3d 1302. Other aspects of executive privilege include a quasi-

---

**2.** The government's motion also initially sought removal of another allegedly privileged document, attached as Exhibit H to Sikorsky's original Opposition to Defendant's Motion for Summary Judgment on the Accord and Satisfaction Defense, Mar. 9, 2012, ECF No. 170. After the filing of the government's motion to strike, Sikor-

sky voluntarily replaced that brief with a version that did not include Exhibit H. *See* Order of June 29, 2012, ECF No. 202. While the parties still dispute whether Exhibit H is privileged, they have not pursued the issue in their briefing, and, accordingly, the court will refrain from ruling on the status of Exhibit H.

judicial privilege that protects the mental processes of executive officials when acting in a judicial capacity, *see Morgan v. United States,* 304 U.S. 1, 18, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), the informer's privilege, which protects the identity of criminal informants, *see Roviaro v. United States,* 353 U.S. 53, 59–60, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and the law enforcement investigatory privilege, which protects information produced pursuant to investigations of potential violations of the law, *see In re Sealed Case,* 856 F.2d 268, 272 (D.C.Cir.1988).

■■■■ The deliberative process privilege "was created to encourage 'open, frank discussion between subordinate and chief concerning administrative action,' and to 'prevent injury to the quality of agency decisions.'" *In re United States,* 321 Fed. Appx. 953, 958 (Fed.Cir.2009) (internal citations omitted) (quoting *Kaiser Aluminum & Chem. Corp. v. United States,* 157 F.Supp. 939, 946 (Ct.Cl.1958), and *Sears,* 421 U.S. at 150–51, 95 S.Ct. 1504). *But see* 26A Charles Alan Wright et al., *Federal Practice and Procedure* § 5680 (1st ed. 1992) (excoriating the privilege as resting upon "a puny instrumental rationale" that relies upon "dubious empirical assumptions"). The privilege is a creation of federal common law[3] and thus is recognized under Fed.R.Evid. 501. *See Evans v. City of Chicago,* 231 F.R.D. 302, 315 n. 5 (N.D.Ill.2005); *Anderson v. Marion Cnty. Sheriff's Dep't,* 220 F.R.D. 555, 563 (S.D.Ind.2004) (quoting *Scott v. Board of Educ.,* 219 F.R.D. 333, 336 (D.N.J.2004)). The privilege is delineated by several procedural and substantive requirements. Procedurally, the privilege can only be invoked by an agency head or his or her subordinate after careful, personal review, *see Marriott Int'l,* 437 F.3d at 1306–07, and that head or designee must identify the specific information that is subject to the privilege and provide reasons for maintaining the confidentiality of the pertinent

record, *see Mobil Oil Corp. v. Department of Energy,* 102 F.R.D. 1, 5 (N.D.N.Y.1983); *see also, e.g., Pacific Gas & Elec. Co. v. United States,* 70 Fed.Cl. 128, 135 (2006), *modified on reconsideration,* 71 Fed.Cl. 205 (2006) ("Blanket assertions of the privilege are insufficient." (quoting *Greenpeace v. National Marine Fisheries Serv.,* 198 F.R.D. 540, 543 (W.D.Wash.2000))). Substantively, the government must demonstrate that the allegedly privileged material is both pre-decisional and deliberative. Material is pre-decisional if it addresses activities "antecedent to the adoption of an agency policy." *Walsky Constr. Co. v. United States,* 20 Cl.Ct. 317, 320 (1990) (quoting *Jordan v. Department of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978)); *cf. McClelland v. Andrus,* 606 F.2d 1278, 1288 (D.C.Cir.1979) (review of administrator's past conduct held not predecisional). "Subjective documents which reflect the personal opinion of the writer, rather than the policy of the agency are considered privileged information because they are predecisional." *Pacific Gas,* 70 Fed.Cl. at 133 (quoting *New York ex rel. Boardman v. National R.R. Passenger Corp.,* 233 F.R.D. 259, 269 (N.D.N.Y.2006)). Material is deliberative if it addresses "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Walsky,* 20 Cl.Ct. at 320 (quoting *Vaughn v. Rosen,* 523 F.2d 1136, 1143–44 (D.C.Cir.1975)). Thus, the privilege does not protect purely factual material, "except as necessary to avoid indirect revelation of the decision making process." *Alpha I, L.P. ex rel. Sands v. United States,* 83 Fed.Cl. 279, 288 (2008) (quoting *Pacific Gas,* 70 Fed.Cl. at 134); *see also Alaska v. United States,* 16 Cl.Ct. 5, 10–11 (1988) (citing *Environmental Protection Agency v. Mink,* 410 U.S. 73, 88–91, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), *superseded by statute,* 5 U.S.C. § 552(a)(4)(B), *as recognized in Central*

---

**3.** One commentator identifies the deliberative process privilege as originating in legal advice given to President Eisenhower as a means for the executive branch to resist testimony during the Army–McCarthy hearings. Once articulated, the rationale "spread like wildfire" throughout the executive, and eventually, into the courts by means of former Justice Stanley Reed's opinion in *Kaiser Aluminum,* 157 F.Supp. 939. *See* Gerald Wetlaufer, *Justifying Secrecy: An Objection to the General Deliberative Privilege,* 65 Ind. L.J. 845, 866–874 (1990).

*Intelligence Agency v. Sims,* 471 U.S. 159, 189, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985)).

A claim of deliberative process privilege, even when properly established, is not absolute. The deliberative process privilege is qualified, requiring the court to balance the interests of the parties for and against disclosures. *See Deseret Mgmt. Corp. v. United States,* 76 Fed.Cl. 88, 96 (2007) (quoting *Scott Paper Co. v. United States,* 943 F.Supp. 489, 496 (E.D.Pa.1996)). The privilege may "be defeated by a showing of evidentiary need by [a] plaintiff[ ] that outweighs the harm that disclosure of such information may cause to the defendant." *Alaska,* 16 Cl.Ct. at 11 (citing *CACI Field Servs., Inc. v. United States,* 12 Cl.Ct. 680, 687 (1987)); *see also Dairyland Power Coop. v. United States,* 77 Fed.Cl. 330, 337–39 (2007) (addressing the evidentiary showing necessary to overcome an assertion of deliberative privilege and identifying five factors commonly considered in that balancing calculus). Additionally, the privilege may be waived if the government produces documents related to the subject matter of the privileged matter or produces the privileged matter in other litigation. *See Alpha I,* 83 Fed.Cl. at 290.

## ANALYSIS

### I. Invocation of the Deliberative Process Privilege

To assert the deliberative process privilege, the government must comply with a series of procedural steps, which require it to (i) invoke the privilege through an agency head or properly chosen subordinate; (ii) specifically identify what records are subject to the privilege; and (iii) provide "precise and certain reasons" for withholding the requested document. *See Pacific Gas,* 70 Fed. Cl. at 134–35 (quoting *Walsky,* 20 Cl.Ct. at

320); *see also Marriott Int'l,* 437 F.3d at 1307–08.[4]

First, the privilege may be invoked by a subordinate chosen by the head, *Marriott Int'l,* 437 F.3d at 1307–08, but such delegation must be carefully considered and made to a subordinate whose expertise makes him or her well suited to the task of determining whether the privilege is applicable. *See id.* The government official to whom authority is delegated may assert the privilege only after "personal consideration" and review of the documents at issue. *Pacific Gas,* 70 Fed.Cl. at 134 (citing *Walsky,* 20 Cl.Ct. at 320). In this instance, DCAA's director formally delegated the authority to assert the deliberative process privilege to the agency's regional directors and to the Director of Field Detachment. Def.'s Reply Ex. 1 (Mem. from Patrick J. Fitzgerald, Director, to Regional Directors, Director, Field Detachment, and Assistant Director, Policy and Plans (Dec. 19, 2011)). These subordinates were given the authority to assert the privilege over documents originating from or being maintained by their offices. *Id.* Once this delegation had been made, the Northeastern regional director, Ronald Meldonian, asserted the privilege, attesting that he had personally "reviewed each of the documents related to" the audit assignments. Def.'s Reply Ex. 2 at 2. As head of the office in which Exhibit P originated, *see* Def.'s Reply Ex. 2 at 1, Mr. Meldonian was qualified under the delegation to determine whether the deliberative process privilege was applicable to Exhibit P. Thus, the government has satisfied the first prong of the procedural test.

Second, the party seeking protection "must state with particularity what information is subject to the privilege." *Pacific Gas,* 70 Fed.Cl. at 135 (citing *Walsky,* 20 Cl.Ct. at 320). In short, "the information or documents sought to be shielded must be identi-

---

**4.** The government's Motion to Strike Documents Protected by the Deliberative Process Privilege was wholly inadequate to support any contention that the government had complied with proper procedures in asserting the privilege. *See generally* Def.'s Mot. The motion neither addressed whether a qualified official was asserting the privilege, nor did it provide precise and certain reasons for why the documents must remain

confidential. *See id.* The government first addressed and corrected these deficiencies in its reply brief, only after the plaintiffs raised the issue of procedural inadequacy. Although the court has considered and taken into account the arguments in, and materials appended to the government's reply, it cautions the government against future instances of such poor briefing practice.

fied and described." *Id.* (citations omitted). In his affidavit, Mr. Meldonian stated that at the time of the e-mail exchanges, two ongoing CAS audit assignments were investigating Sikorsky's compliance with CAS 410. Def.'s Reply Ex. 2 ¶ 4 ("[V]arious drafts of the audit report, draft working papers for the assignments, and e[-]mail correspondence related to the preparation and approval of [the assigned audits had been disclosed, including Exhibit P, even though] neither of these [audits] is final."). Mr. Meldonian provided a detailed list that identified each document, including Exhibit P. *See* Def.'s Reply Ex. 2, Appendix. Mr. Meldonian's explanation of the relationship of Exhibit P to the ongoing audit reports, coupled with his appendix identifying each individual document, including Exhibit P, over which he asserted the privilege, is detailed and specific, and is thus sufficiently particular in its explanation of what information is subject to the privilege.

Third, "the agency must supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document." *Pacific Gas,* 70 Fed.Cl. at 135 (citing *Walsky,* 20 Cl.Ct. at 320.) "Blanket assertions of the privilege are insufficient." *Id.* (citing *Greenpeace,* 198 F.R.D. at 543). Mr. Meldonian did not assert a general claim of privilege over Exhibit P and the other documents; rather, after identifying with precision the documents to be covered, he contended that they were pre-decisional and deliberative—and thus subject to the deliberative process privilege—and then demonstrated why the information contained within the documents should remain confidential. Def.'s Reply Ex. 2 ¶¶ 3–4. He stated that the "release of [the] unfinished audit reports" and related correspondence would "significantly inhibit" the auditors' candor and could harm the integrity of the DCAA's decision-making process. Def.'s Reply Ex. 2 ¶ 10. Furthermore, he asserted that release of the information could cause confusion about the DCAA's stance with regard to various audits and could lead to misinterpretations before the DCAA adopts a final position. *Id.* The court is satisfied that Mr. Meldonian properly invoked the deliberative process privilege as a procedural matter.

## II. The Privileged Status of "Exhibit P"

### ■. *Pre–Decisional and Deliberative*

[6] Once the government has complied with the procedural requirements of the deliberative process privilege, it must demonstrate that the privilege actually covers the records at issue. First, the government must show that the records are both pre-decisional and deliberative. "[E]ven factual segments of documents 'are protected ... from disclosure as not being purely factual if the manner of selecting or presenting those facts would reveal the [deliberative] process, or if the facts are inextricably intertwined with the policy-making process.'" *Jowett, Inc. v. Department of Navy,* 729 F.Supp. 871, 877 (D.D.C.1989) (internal quotations omitted) (quoting *Ryan v. Department of Justice,* 617 F.2d 781, 790 (D.C.Cir.1980)); *see also In Re United States,* 321 Fed.Appx. at 959 (Fed. Cir.2009) (noting that factual information that "cannot be severed from the deliberative context is protected"). Thus, whether a portion of material within a document is factual is not dispositive; rather, facts contained in documents related to an agency's decision-making process "must be considered within the context of the document as a whole, and within the context of the document as part of the agency's overall decision-making process." *In re United States,* 321 Fed.Appx. at 959–960 (quoting *Rein v. United States Patent & Trademark Office,* 553 F.3d ■ 375 (4th Cir.2009)).

[7] Here, Exhibit P consists of communications between two government employees about DCAA audits that were ongoing at the time. In particular, the e-mail chain focuses on the subjective thoughts of a DCAA auditor, Mr. Boyer, regarding the status of the audits. Mr. Boyer uses his opinion of a past event, Sikorsky's alleged violation of CAS 418 some years earlier, to convey to his superior his opinion about what action the DCAA should take in the *ongoing* audits. In short, Mr. Boyer's impressions regarding the events surrounding the prior CAS 418 compliance issue are pre-decisional because the recounting of the past occurrence is subjective and was recited specifically to influence DCAA's handling of an ongoing audits. In

the same vein, the entirety of Exhibit P also is deliberative. In the commentary to his superior, Mr. Boyer recommends that the agency change course before it issues final audits.

Sikorsky argues that the sentences about the prior CAS 418 compliance issue must be disclosed because they are purely factual in nature even if the remaining portions of Exhibit P would have to be redacted. Such a reading overlooks the narrowness of the "purely factual" category. Facts may be withheld under the deliberative process privilege if they are inextricably intertwined with a policy-making process. Although the sentences in Mr. Boyer's commentary about the actions of DCAA and its employees during the prior audit are largely factual, they are nonetheless intertwined with the ongoing CAS 410 audits. In Exhibit P, Mr. Boyer describes past events to provide a comparative context for problems he perceived in the ongoing audits. That intertwining prevents any reasonable effort to segregate factual material from what otherwise is a pre-decisional, deliberative commentary.

### B. Balancing the Parties' Competing Interests

■ Although the government has established that the deliberative process privilege applies to Exhibit P, that is not the end of the inquiry. Because the privilege is qualified, the court must balance the interests of the parties. *Deseret Mgmt. Corp.*, 76 Fed.Cl. at 96. The privilege will yield to the plaintiff's evidentiary need if the need "outweighs the harm that disclosure of such information may cause to the defendant." *Alaska*, 16 Cl.Ct. at 11. When balancing these competing interests, courts may take into consideration:

(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Dairyland Power*, 77 Fed.Cl. at 338 (quoting *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C.Cir.1992)).

In addition, courts have noted that when the government is a party and asserts the privilege, the "[g]overnment's stake in [the] litigation means that its invocation of the deliberative process privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope." *Dairyland Power*, 77 Fed.Cl. at 342.

■ Here, the first factor weighs in favor of Sikorsky, because Exhibit P contains sentences that are relevant to Sikorsky's statute of limitations defense in its ongoing litigation against the government. *See* Pl.'s Opp'n at 10. The second factor, however, heavily tilts in the government's favor. Other evidence is available to substantiate Sikorsky's defensive claim, a point Sikorsky itself concedes. *Id.* This evidence includes draft audit reports and other documents and testimony from government employees involved in the prior CAS 418 noncompliance issue. *See* Pl.'s Opp'n at 10 (citing ECF No. 166, Pl.'s Opp'n at 7–13); *see also* Def.'s Reply at 13.

The third factor favors neither party. This litigation is "serious," as the damages sought are substantial, and a decision in the case may affect how both parties respond to cost-accounting standards in the future. The fourth factor weighs in favor of Sikorsky, because the government is invoking the privilege as a party to litigation, and as such, the invocation must be carefully examined. The fifth factor, however, tips the scales in the government's favor. Disclosure of government employees' correspondence—and a candid assessment of an agency's ongoing policy-making activities—could lessen employees' willingness to have a full and frank discussion about the merits of ongoing audits, thereby sapping the process of robust debate and collaborative analysis among audit team members. Overall, because Sikorsky has not demonstrated that its interest in Exhibit P outweighs the government's interest in preserving the confidentiality of the document, the balance of interests favors the government, and Exhibit P is protected under the deliberative process privilege.

### III. Waiver

The government has properly invoked the deliberative process privilege over Exhibit P,

and Sikorsky has not demonstrated that its need for the document outweighs the government's interest in confidentiality. Nonetheless, the question arises whether the government has waived its otherwise proper claim of privilege by waiting so long to assert it. As recounted *supra*, the government produced Exhibit P in February 2011 and became aware that the production may have been in error at Mr. Boyer's deposition in July 2011. However, the government did not assert privilege over Exhibit P until January 2012 and did not communicate that assertion to Sikorsky until May 2012, fifteen months after production and ten months after discovery of its error. Sikorsky argues that the government's deferred action effectively waived the privilege. Pl.'s Opp'n at 11–12. The government responds that Sikorsky has cited "no authority to support its argument that the passage of time alone is sufficient to waive the deliberative process privilege" and that the government "should not be penalized for taking the time to carefully consider the propriety of asserting the privilege." Def.'s Reply at 2, 14.

In this context, waiver through a failure promptly to assert privilege is not well delineated conceptually. A leading commentator on procedural issues has noted that "[w]aiver of governmental privileges is a topic mired in obscurity." 26A Wright et al., *Federal Practice and Procedure* § 5692. Consequently, some exposition is necessary to clarify the framework for ruling on the government's motion to claw back "Exhibit P" on grounds of the deliberative process privilege.

### A. Guideposts

Waivers of privilege "come in various sizes and shapes," *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir.2003), and that holds true for the deliberative process privilege as well. The government may waive the deliberative process privilege by using the privileged material in other litigation, *see Alpha I*, 83 Fed.Cl. at 290, by disclosing documents with similar information, *see id.*, by using the privilege in an attempt to shield governmental misconduct, *see In re Sealed Case*, 121 F.3d 729, 738 (D.C.Cir.1997), or by placing a portion of

privileged material at issue while self-servingly retaining the rest, *see Rupert v. United States*, 225 F.R.D. 154, 156 (M.D.Pa.2004) (citing *In Re Keeper of Records*, 348 F.3d at 24).

In this jurisdiction, there is limited precedent on the question whether the deliberative process privilege may be waived simply by the passage of time. A timeliness element to the assertion of the deliberative process privilege was suggested in an order by then-Judge Hewitt in *Shoshone Indian Tribe of the Wind River Reservation v. United States*, No. 458a–79L (Fed.Cl. May 16, 2002), included as an attachment to Judge Allegra's opinion in *Jicarilla Apache Nation v. United States*, 88 Fed.Cl. 1 (2009). In *Shoshone*, the court rejected a contention by the government that certain documents were protected by the deliberative process privilege, ruling that "defendant had an obligation to assert the privilege in its original motion ... and the failure to do so constituted a waiver of the right to assert the deliberative process privilege." *Jicarilla Apache*, 88 Fed.Cl. attach. at 36 n. 1.

Correlatively, several decisions in other jurisdictions at the trial level also suggest that timeliness is a requirement for assertion of the deliberative process privilege. Most closely on point is *Scott v. PPG Indus., Inc.*, 142 F.R.D. 291 (N.D.W.Va.1992). In *Scott*, the government had inadvertently disclosed documents under the Freedom of Information Act that should have been withheld under the deliberative process privilege. The government requested the return of the documents. The court held that the agency had not waived the privilege because "[there was] no indication that the [agency] was aware of the mistake until the deposition of [an agency employee], and the [agency] *reacted reasonably promptly thereafter.*" *Id.* at 294 (emphasis added).

Apart from *Scott*, several cases have rejected a claim by the government that documents could be withheld from production in discovery on grounds of the deliberative process privilege even though the government failed to assert the privilege in a timely manner. In *Fonville v. District of Columbia*, 230 F.R.D. 38 (D.D.C.2005), the court

applied the 30–day deadline for objections to interrogatories found in Fed.R.Civ.P. 33 to hold that the government's claims of deliberative process privilege, issued in a privilege log 125 days after interrogatories were served, came too late. *Id.* at 40–42. The court reasoned that "there is simply no reason to depart from the general rules regarding waiver," and, accordingly, found that waiver had occurred. *Id.* at 42. Correlatively, federal trial courts in California have applied general waiver principles to determine whether assertion of the deliberative process privilege was untimely. In *Coalition for a Sustainable Delta v. Koch*, No. 1:08–CV–00397 OWW (GSA), 2009 WL 3378974 (E.D.Cal. Oct. 15, 2009), a state agency withheld records from production in discovery on the ground that the records were subject to the deliberative process privilege. In response to an argument that the state agency had waived the privilege, the court applied the general waiver framework set out in *Burlington Northern & Santa Fe Ry. v. United States*, 408 F.3d 1142 (9th Cir.2005), which includes as one factor the timeliness of the objection. *See Sustainable Delta*, 2009 WL 3378974, at *3 (quoting *Burlington Northern*, 408 F.3d at 1149).[5] Given the "voluminous and complex" discovery in the case, the court held that the agency's "claims of privilege were asserted as soon as reasonably practicable" and were not waived. *Id.* at *5.[6]

Correspondingly, in *Vietnam Veterans of Am. v. Central Intelligence Agency*, No. 09–cv0037 CW (JSC), 2012 WL 1156398 (N.D.Cal. Apr. 6, 2012), *vacated in part*, 2012 WL 1535738 (N.D.Cal. May 1, 2012), the district court applied the *Burlington Northern* framework to determine whether a federal agency had timely updated its privilege log with claims of deliberative process privilege. The court noted that the pertinent document requests had been made more than a year earlier than the assertion of the privilege and thus held that the assertion came too late. *See id.* at *3. On reconsideration, it came to light that the privileged documents were produced as part of a broader search of the agency's records commenced after the initial rounds of discovery. The court consequently vacated its earlier order, finding that "the assertion of privilege, while not made expeditiously, is not subject to waiver based on timeliness." *Vietnam Veterans*, 2012 WL 1535738, at *2.

Finally, in *In re McKesson Governmental Entities Wholesale Price Litig.*, 264 F.R.D. 595 (N.D.Cal.2009), a state agency had produced documents in a different, earlier litigation. When those same documents were subpoenaed in the pending case, the agency responded by resisting disclosure and purporting to "reserve[ ] the right to review the document[s] ... and assert further objections if necessary." *Id.* at 599. When the agency later attempted to invoke the deliberative process privilege, the court held that the privilege should have been specifically invoked in the state agency's initial response to the discovery request and was thus waived. *Id.* at 599–600. A comparable situation occurred in *Dominguez v. Schwarzenegger*, No. C 09–2306 CW (JL), 2010 WL 3341038 (N.D.Cal. Aug. 25, 2010), with similar results. *See id.* at *6 (after court warnings and defendants' "repeated failures to substantiate their claims of [deliberative process] privilege" as made on a privilege log, privilege held waived).

These cases apply "the general rules regarding waiver." *Fonville*, 230 F.R.D. at 42. Those general rules include a timeliness ele-

**5.** *Burlington Northern* had upheld a district court's finding that privileges against production in discovery had been waived based upon a delay of five months in serving a privilege log, in light of the fact that Burlington Northern was a sophisticated corporate litigant. 408 F.3d at 1149. Given the context of the *Burlington Northern* litigation, the privileges involved almost certainly did not include the deliberative process privilege.

**6.** Quoting *Burlington Northern*, the district court relied on the Ninth Circuit's rejection of "a *per se* rule that 'failure to produce a privilege log in a timely manner triggers a waiver of privilege,'" *Sustainable Delta*, 2009 WL 3378974, at *3, commenting "that [Fed.R.Civ.P.] 26's requirement for proper assertion of a privilege does not correlate with [Fed.R.Civ.P.] 34's 30–day deadline for serving written responses to discovery requests 'nor does it explicitly articulate a waiver rule.'" *Id.* Rather, the timeliness of the objection and the information about the withheld records were factors to be taken into account in reaching a decision on waiver. *Id.*

ment, as demonstrated by the application of a timeliness requirement in other contexts. *See* Fed.R.Evid. 502(b)(3) (when records are inadvertently disclosed, assertion of work-product or attorney-client privilege must be made "promptly"); *Securities and Exch. Comm'n v. Lavin*, 111 F.3d 921, 931 (D.C.Cir.1997) (recognizing that marital communications privilege may be waived if not timely asserted); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981) (Fifth Amendment privilege against self-incrimination waived when not asserted until fifteen months after interrogatories propounded); *United States v. Figueroa–Paz*, 468 F.2d 1055, 1057–58 (9th Cir.1972) (marital communications and spousal privileges waived if not timely asserted); *National Helium Corp. v. United States*, 219 Ct.Cl. 612, 614 (1979) (attorney-client privilege waived if claimant's actions are "lax, careless, or inadequate"); *Moloney v. United States*, 204 F.R.D. 16, 21 (D.Mass.2001) (failure to specify grounds for objection at deposition means waiver of later-asserted federal self-critical analysis privilege, federal medical peer review privilege, and state statutory privilege); *In re Polypropylene Carpet Antitrust Litig.*, 181 F.R.D. 680, 689 (N.D.Ga. 1998) (whether inadvertent disclosure of material protected by the law enforcement investigatory privilege constitutes a waiver depends on, among other factors, the "delay and measures taken to rectify the disclosures"); *Hobson v. Moore*, 734 S.W.2d 340, 341 (Tex.1987) (law enforcement investigatory privilege waived when there was a failure timely to object to interrogatories).

■ Given these precedents, the court holds that the invocation of the deliberative process privilege, as with other privileges, is subject to a timeliness requirement. This should be an entirely unremarkable proposition. As discussed, the privilege can be waived for other reasons, *see Alpha I*, 83 Fed.Cl. at 290, and there is no basis to refrain from extending the waiver to instances of indiligence, indolence, or dawdling. Waivers of this sort in effect require parties to be reasonably careful and assiduous in protecting confidential communications, *see Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1127 (7th Cir.1997) (Posner, C.J.); *In re Sealed Case*, 877 F.2d 976, 980

(D.C.Cir.1989) (Silberman, J.), *abrogated in part by* Fed.R.Evid. 502 *as recognized in Williams v. District of Columbia*, 806 F.Supp.2d 44, 48 (D.D.C.2011), and to prevent prejudicing opposing litigants who have relied upon the disclosures, *see In re Natural Gas Commodity Litig.*, 229 F.R.D. 82, 90 (S.D.N.Y.2005). Those rationales apply here.

With that said, the court emphasizes that its holding only extends to the deliberative process branch of the executive privilege. Waiver attributable to the passage of time may be found inapplicable or, at least, unwise, for other aspects of executive privilege. *Cf. Nixon*, 418 U.S. at 708, 94 S.Ct. 3090 (presidential privilege "is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution"); *Mink*, 410 U.S. at 84, 93 S.Ct. 827 (affording broad protection to "highly sensitive matter[s] that [are] vital to our national defense and foreign policy" (quoting Exec. Order No. 10501 (Nov. 5, 1953), *revoked and superseded by* Exec. Order No. 11652 (Mar. 8, 1972))); *United States v. Reynolds*, 345 U.S. 1, 10, 73 S.Ct. 528, 97 L.Ed. 727 (1953) (military secrets should not be divulged in the interests of national security); *Chicago & Southern*, 333 U.S. at 111, 68 S.Ct. 431 (reports from intelligence services to the President as part of scheme for regulation of foreign commerce should remain secret). But as to the deliberative process privilege itself, in the context of untimely assertion of the privilege after an inadvertent disclosure, the possibility of waiver does not appear to impinge upon any of these more significant interests.

### B. *The Proper Test for Waiver*

■ Having established that an untimely assertion of the deliberative process privilege may result in waiver, the question now becomes what criteria should be applied to determine whether such a waiver has occurred. Unsurprisingly, no binding precedent exists for this inquiry. It is helpful, however, in reaching a decision regarding this privilege to look to results related to the attorney-client privilege and the work-product doctrine. *See Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir.2002)

("the deliberative process privilege ... [is] a sub-species of work-product privilege that covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" (internal quotation marks omitted) (quoting *Klamath,* 532 U.S. at 8, 121 S.Ct. 1060)); *Kaiser Aluminum,* 157 F.Supp. at 946–47 (disclosure of documents under the deliberative process privilege "seeks to lay bare the discussion and methods of reasoning of public officials" and "is akin to the request for production of written statements and mental impressions contained in the files and the mind of the attorney" (internal quotation marks omitted) (citing *Hickman v. Taylor,* 329 U.S. 495, 509, 67 S.Ct. 385, 91 L.Ed. 451 (1947))).

There is a test readily available to determine whether inadvertent disclosure waives the attorney-client or work-product privilege and, by analogy, the deliberative process privilege as well. That test is found in the recently enacted Fed.R.Evid. 502 and states:

> (b) *Inadvertent disclosure.* When made in a federal proceeding ..., the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) *the holder promptly took reasonable steps to rectify the error,* including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).[7]

Fed.R.Evid. 502(b) (emphasis added). The Rule, enacted September 19, 2008 and made effective to all proceedings commenced after the date of enactment and to all then-pending proceedings to the extent "just and practicable," *see* Pub.L. No. 110–322, § 1(c), 122 Stat.

3537, "seeks to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege or work-product protection," Fed.R.Evid. 502 Advisory Comm. Notes (Nov. 28, 2007). The test set out in Fed.R.Evid. 502(b) does so by resolving circuit conflicts over inadvertent disclosure and waiver:

> Courts are in conflict over whether an inadvertent disclosure of a communication or information protected as privileged or work product constitutes a waiver. A few courts find that a disclosure must be intentional to be a waiver. Most courts find a waiver only if the disclosing party acted carelessly in disclosing the communication or information and failed to request its return in a timely manner. And a few courts hold that any inadvertent disclosure of a communication or information protected under the attorney-client privilege or as work product constitutes a waiver without regard to the protections taken to avoid such a disclosure....
>
> The rule opts for the middle ground: inadvertent disclosure of protected communications or information in connection with a federal proceeding or to a federal office or agency does not constitute a waiver if the holder took reasonable steps to prevent disclosure and also promptly took reasonable steps to rectify the error. This position is in accord with the majority view on whether inadvertent disclosure is a waiver.

*Id.; see also* 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2016.3 (3d ed. 2010) ("[T]he contrast of the[ ] two extreme rules points persuasively to the merit of a rule closer to the Aristotelian mean." (quoting *Federal Deposit Ins. Corp. v. Ma-*

---

7. Federal Rule of Civil Procedure 26(b)(5)(B) is identical to Rule 26(b)(5)(B) of the Rules of the Court of Federal Claims, and provides:

*Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, seques-

ter, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

*rine Midland Rlty. Credit Corp.*, 138 F.R.D. 479, 482 (E.D.Va.1991))).

Prior to enactment of Rule 502, the proper test in this court for waiver remained unsettled. A decision of the Court of Claims, *National Helium*, was widely recognized for the proposition that an inadvertent disclosure of privileged material despite "a good faith, sufficiently careful, effort to winnow a relatively small number of privileged materials from a very large volume of documents" does not result in waiver of the attorney-client privilege. 219 Ct.Cl. at 615. The salient question was deemed to be whether the producing party had employed a "lax, careless, or inadequate" screening procedure. *Id.* However, in *Carter v. Gibbs*, 909 F.2d 1450 (Fed.Cir.1990) (en banc), *superseded on other grounds by statute*, Pub.L. No. 103–424 § 9(c), 108 Stat. 4361 (1994), *as recognized in Mudge v. United States*, 308 F.3d 1220, 1223 (Fed.Cir.2002), a decision issued ten years after *National Helium*, the Federal Circuit held that the accidental appending of an internal Department of Justice memorandum to a motion for extension of time would waive work-product protection as to that memorandum. Without citing *National Helium*, the court stated that "[i]t is irrelevant whether the attachment was inadvertent. ... Voluntary disclosure of attorney work product to an adversary in the litigation for which the attorney produced that information defeats the policy underlying the privilege.... Granting the motion would do no more than seal the bag from which the cat has already escaped." *Id.* at 1451.

Opinions from this court previously employed a variety of devices to limit *Carter* and to follow *National Helium*. *See Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 501 n. 18 (2009) (adopting the reasoning of *International Bus. Machs. Corp. v. United States*, 37 Fed.Cl. 599, 603 (1997), which held that *National Helium* prevails over *Carter* because *National Helium* is an earlier, controlling decision not expressly or impliedly overruled by the en banc court in *Carter*); *Evergreen Trading, LLC ex rel. Nussdorf v. United States*, 80 Fed.Cl. 122, 128–29 (2007) (citing *Carter* only for the proposition that "the voluntary disclosure of privileged communications to third parties

(who are neither agents of the attorney nor the client) ... generally destroys the privilege"); *Alaska Pulp Corp. v. United States*, 44 Fed.Cl. 734, 736 (1999) (construing *Carter*, "an egregious case by any measure," narrowly and thus finding it did not apply to the case under decision); *B.E. Meyers & Co. v. United States*, 41 Fed.Cl. 729, 731–32 (1998) (citing *National Helium* as providing the standard for determining whether disclosure results in waiver and including a "but see" citation to *Carter*); *Telephonics Corp. v. United States*, 32 Fed.Cl. 360, 361 (1994) (citing *National Helium* for the proposition that waiver must be determined under all the circumstances of disclosure and simply omitting to cite *Carter* at all); *see also PK Contractors, Inc.*, ASBCA No. 53576, 04–1 BCA (CCH) ¶ 32516, 2004 WL 95239, at *2–3 (Jan. 20, 2004); *cf. Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed.Cir.1997) (citing *Carter* for the proposition that, generally, disclosure of material to a third party constitutes a waiver, but also acknowledging (citing cases from the Fifth, Ninth, and D.C. Circuits but without citing *National Helium*), that waiver may not result if the disclosure is inadvertent).

The enactment of Fed.R.Evid. 502 would seem to have put this controversy to rest. The court sees no reason to refrain from embracing the subsection of that Rule pertaining to inadvertent disclosures, which accords with the principles applied in *National Helium*, and extending it to the context of the deliberative process privilege.

### C. Whether the Government Has Waived the Privilege

Applying the three-part test in Fed. R.Evid. 502(b), the court must determine whether the government's disclosure of Exhibit P was inadvertent, whether the government took reasonable steps to prevent its disclosure, and whether the government promptly took reasonable steps to rectify the error. As acknowledged in the explanatory notes to the Rule, this three-part test draws from the preexisting case law on waiver. The notes approve of, without "explicitly codify[ing]," cases such as *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104

F.R.D. 103 (S.D.N.Y.1985), and *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323 (N.D.Cal.1985), which employed a commonly used multi-factor test for determining waiver. Fed.R.Evid. 502 Advisory Comm. Notes; *see also, e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 291 (D.Mass. 2000); *Starway v. Independent Sch. Dist. No. 625*, 187 F.R.D. 595 (D.Minn.1999); *Sanner v. Board of Trade of City of Chicago*, 181 F.R.D. 374, 379 (N.D.Ill.1998); *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 176 F.R.D. 695, 699–700 (M.D.Ga.1997); *Kansas City Power & Light Co. v. Pittsburg & Midway Coal Mining Co.*, 133 F.R.D. 171, 172 (D.Kan.1989). Thus, that case law, both pre- and post-Fed. R. Evid. 502, will inform the court's inquiry as to whether the government acted appropriately in this case.

 First, there is the question of whether the government's disclosure of Exhibit P was inadvertent. There is no evidence that the government reached a conscious decision to disclose the document apart from including it in a general production in discovery. Unlike in *Carter*, for example, where the government appended a protected document to a court motion, Exhibit P was simply produced as part of a massive discovery response. The government's situation is more comparable to that of the plaintiff in *National Helium*, in which ten privileged documents slipped through a production of 150 cartons of material.

Next, there is the question of whether the government took reasonable steps to prevent Exhibit P's disclosure. The parties have neither briefed nor argued this particular issue, and the court cannot determine that the government's attorneys were unreasonable in their efforts to identify and protect privileged materials.

Finally, however, there is the question of whether the government "promptly took reasonable steps to rectify the error" of Exhibit P's disclosure. Fed.R.Evid. 502(b)(3). Sikorsky points out that the government waited fifteen months from the time of production to assert the privilege, Pl.'s Opp'n at 11, but the time between production and a claim of privilege should not be dispositive. "The rule does not require the producing party to

engage in a post-production review to determine whether any protected communication or information has been produced by mistake." Fed.R.Evid. 502 Advisory Comm. Notes.

Nonetheless, "the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." Fed.R.Evid. 502 Advisory Comm. Notes. Here, then, the question is whether the government acted reasonably promptly once Exhibit P was brought to light at the deposition on July 20, 2011. Cases from other jurisdictions hold that once a party realizes a document has been accidentally produced, it must assert privilege with virtual immediacy. *See, e.g., Clarke v. J.P. Morgan Chase & Co.*, No. 08 Civ. 02400(CM)(DF), 2009 WL 970940, at *6 (S.D.N.Y. Apr. 10, 2009) (citing cases in which failure to assert privilege within periods from six days to one month resulted in waiver and holding that a delay of more than two months in asserting privilege results in waiver); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 700 (S.D.Fla.2009) (holding privilege waived when privilege holder took no action for almost two months after disclosure, including a three-week lag after opponent used document in support of motion for sanctions); *Crossroads Sys. (Tex.), Inc. v. Dot Hill Sys. Corp.*, No. A–03–CA–754–SS, 2006 WL 1544621, at *2–3 (W.D.Tex. May 31, 2006) (holding alternatively that failure to assert privilege until six months after a document was used at a deposition results in waiver and that failure to petition court until three months after opponent's refusal to return document results in waiver); *Securities and Exch. Comm'n v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y.1999) (concluding that passage of twelve days before attempting to rectify error results in waiver); *see also, e.g., Semi–Tech Litig. LLC v. Bankers Trust Co.*, No. 02 CIV. 0711(LAK), 2002 WL 1751267, at *2 (S.D.N.Y. July 27, 2002) (no waiver when "extremely prompt" assertion of privilege within 24 hours); *Sanner*, 181 F.R.D. at 379 (no waiver when holder "immediately" withdrew documents from production and com-

586

municated inadvertent disclosure to other party). *See generally Luna Gaming–San Diego, LLC v. Dorsey & Whitney, LLP,* No. 06cv2804 BTM (WMc), 2010 WL 275083, at *5 (S.D.Cal. Jan. 13, 2010) (aggregating cases on the issue of waiver).

In this court, Judge Sweeney's opinion in *Eden Isle Marina,* 89 Fed.Cl. 480, is apposite. That opinion applied Fed.R.Evid. 502 to address facts related to assertion of attorney-client privilege and work-product protection that are similar to those in this case respecting invocation of the deliberative process privilege. As in this case, in which the government produced Exhibit P in discovery and Sikorsky then used that record at Mr. Boyer's deposition, the plaintiff in *Eden Isle Marina* had used several sets of documents produced in discovery during subsequent depositions. The factual match of the cases extends to the government's subsequent conduct. Here, the government stated that the documents "may be the subject of deliberative process privilege," but only at the end of Mr. Boyer's deposition, Pl.'s Opp'n Ex. D, at 354:2–3, while the government in *Eden Isle Marina* failed to object to the use of some sets of documents, and only half-heartedly objected to the use of others. Moreover, in this case, the government waited approximately ten months after the deposition to communicate its claim of privilege, while the government in *Eden Isle Marina* waited seven months and nine and one-half months to assert privilege or protection over the various sets of documents used in depositions in that case. *See Eden Isle Marina,* 89 Fed.Cl. at 505–520. Under these circumstances, the court in *Eden Isle Marina* held that the government had made "inadequate efforts to rectify its disclosures upon discovery" and had waived attorney-client privilege and work-product protection. *Id.* at 520.

In light of these precedents, it is evident here that the government did not act with sufficient alacrity to claw back the records produced in this case. The government waited until the conclusion of Mr. Boyer's deposition to raise the possibility of a claim of deliberative process privilege. That alone is not fatal, though it is hardly helpful. *Cf. Nguyen v. Excel Corp.,* 197 F.3d 200, 206–08

(5th Cir.1999) (holding that objections to attorney's conclusions came too late, after no objection had been raised to related questions about directions company's executives had provided to attorneys). The months of inexplicable delay that followed, however, are much more problematic. The court is well aware that the formalities attendant to assertion of the deliberative process privilege may require more time than an attorney's typical assertion of attorney-client privilege or work-product protection. But, Mr. Boyer's deposition took place on July 20, 2011, yet the government waited until January 19, 2012, roughly six months later, to assert the deliberative process privilege over Exhibit P. Thereafter, inexplicably and inexcusably, the government waited until May 14, 2012, nearly four months after its assertion of privilege and two-and-one-half months after Sikorsky had used Exhibit P in a brief, to communicate its assertion of privilege to Sikorsky. In total, the government waited almost ten months, from July 20, 2011 until May 14, 2012, to convey its assertion of privilege over Exhibit P. By any measure, that is simply too long a time to try now to resuscitate the privilege. Its spirit has long since entered the Elysian Fields of the public domain.

## CONCLUSION

For the reasons stated, the government's motion to strike an exhibit is DENIED.

It is so ORDERED.